THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL A. JOHNSON, Defendant-Appellant.

First District (2nd Division)   No. 1—88—0867

Opinion filed July 11, 1989.

Constantine P. Xinos, of Xinos & Xinos, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Kenneth T. McCurry, and Edward Pacer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

After a bench trial, defendant was convicted of the offense of child pornography (Ill. Rev. Stat. 1983, ch. 38, par. 11—20.1(a)(2)) and sentenced to two years' felony probation. He now appeals and presents the following issue for review: whether the trial court properly found him guilty of child pornography on the basis of his being in possession of books depicting nude photographs of girls under the age of 16.

During the course of investigating the distribution of child pornography, United States Postal Inspector John Ruberti received a letter from defendant in response to an ad Ruberti had placed, stating that defendant wanted to start a private collection of young girls "in action." During the next few months, Ruberti used the pseudonym "Linda," under which he exchanged several letters with defendant. Through these letters, defendant indicated the type of books he had in his possession and offered to meet and exchange books with his correspondent.

Defendant and "Linda" agreed to meet at an apartment at 515 West Melrose in Chicago. Watching the meeting by way of a hidden closed circuit camera, Ruberti saw defendant give three magazines (exhibits 14, 15, and 16) to a confidential informant and heard him agree to return at a later date with more material. Defendant was arrested at the second meeting, at which he was in possession of three additional magazines (exhibits 17, 18, and 19). After being advised of his *Miranda* rights, defendant told the arresting officers that he had a desire to have sex with girls between the ages of 13 and 16, and that he had ordered the magazines to satisfy his curiosity. Defendant

was 31 years old at the time of trial.

After viewing the exhibits, the court stated that it did not consider the photos in exhibits 17, 18, and 19 to be child pornography because it could not determine that the girls pictured there were under 18 years old. However, the court found exhibits 14, 15, and 16, viewed in their entirety, to be a violation of the law, the judge stating:

> "There are hundreds of pictures in this book. There is no way that I can say number one in the upper right-hand corner of the page that is not even marked, doesn't have any number, is and the other one isn't.
>
> What I'm saying, these two books or three books—and more particularly exhibits 14 and 15 in their entirety, looked at in their entirety, are a violation of the law.
>
> There are some books—some pictures in there that don't portray the genital areas. They are not going to be a violation. I don't think those who will be reviewing this case are going to have any problem. They are going to look at the books and they are going to make a decision based on the entirety of the evidence."

Defendant was convicted under section 11—20.1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 11—20.1):

> "11—20.1.(a) A person commits the offense of child pornography who:
>
> * * *
>
> (2) with the knowledge of the nature or content thereof, sells, offers for sale, possesses with intent to sell or otherwise disseminates, exhibits or makes available any film, videotape, photograph or other similar visual reproduction of any child under the age of 16 engaged in any activity described in subparagraphs (i) through (vii) of paragraph (1) of this subsection."

The relevant subparagraph of paragraph (1) is (vii):

> "where such child is:
>
> (vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the genitals of the child or other person." (Ill. Rev. Stat. 1983, ch. 38, par. 11—20.1(a).)

Defendant concedes, as he must, the constitutionality of the child pornography statute. (*New York v. Ferber* (1982), 458 U.S. 747, 73 L. Ed. 2d 1113, 102 S. Ct. 3348; *People v. Geever* (1988), 122 Ill. 2d 313, 522 N.E.2d 1200.) Nor does defendant contest the trial court's finding that the children in the photographs were under the statutory age. He claims, rather, that the trial court incorrectly found him guilty of child pornography, arguing that the pictures in question depict nudity or an

"exhibition of the genitals" as opposed to a "lewd exhibition of the genitals."

Defendant adds that to be "lewd" the photographs must be "obscene, lustful, indecent, lascivious, lecherous" (*People v. Walcher* (1987), 162 Ill. App. 3d 455, 515 N.E.2d 319), and that to constitute a "lewd exhibition of the genitals," the conduct must be patently offensive to be considered obscene. (*Ward v. Illinois* (1977), 431 U.S. 767, 52 L. Ed. 2d 738, 97 S. Ct. 2085.) Defendant further claims that a photograph is "lewd" if there is a focus on the genitals or attention drawn to that area by either the photographer or the subject (*People v. Gould* (1975), 60 Ill. 2d 159, 324 N.E.2d 412), and that "a photograph is 'lewd' if there is touching of the genitals by the subject, adult contact with the child, adult sexuality or suggestiveness or convoluted poses to expose the genitals." (*People v. Lerch* (1985), 134 Ill. App. 3d 643, 480 N.E.2d 1253.) Finally, defendant avers that a photograph is not "lewd" if there is no attempt by the subject(s) to convey, or by the photographer to depict, any suggestive or seductive pose. *People v. Biocic* (1967), 80 Ill. App. 2d 65, 224 N.E.2d 572.

Citing *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, and *City of Chicago v. Geraci* (1970), 46 Ill. 2d 576, 578, 264 N.E.2d 153, defendant asserts that a reviewing court is obligated to make an independent judgment as to whether photographs on which a conviction is based are obscene or whether they are entitled to constitutional protection. In doing so, defendant urges this court to find that the photographs are not lewd under the standards enumerated *supra*, and to reverse his conviction.

Defendant overlooks that it is incumbent upon this court to construe "lewdness" consistent with the grave concerns expressed by the United States Supreme Court in *Ferber* and reiterated by the Illinois Supreme Court in *Geever*, in which both courts permitted the imposition of punishment for the depictions at issue there not because they were obscene but because they were obtained by sexually abusing and exploiting children. We are thus constrained to presume that because child models are incapable of refusing to participate in pornographic films or photographs, child pornography can be legally banned irrespective of a work's social or artistic merit.

In *Ferber*, the United States Supreme Court cites various congressional committee hearings and reports which depict how "the exploitive use of children in the production of pornography has become a serious national problem." (*Ferber*, 458 U.S. at 749, 73 L. Ed. 2d at 1117, 102 S. Ct. at 3350.) *Ferber* goes on to relate that " 'child pornography and child prostitution have become highly organized, multi-

million dollar industries that operate on a nationwide scale.' [Citation.] One researcher has documented the existence of over 260 different magazines which depict children engaging in sexually explicit conduct. [Citation.] 'Such magazines depict children, some as young as three to five years of age \*\*\*. The activities featured range from lewd poses to intercourse, fellatio, cunnilingus, masturbation, rape, incest and sado-masochism.' [Citation.] In Los Angeles alone, police reported that 30,000 children have been sexually exploited. \*\*\* The Federal Government and 47 States have sought to combat the problem with statutes specifically directed at the production of child pornography." *Ferber*, 458 U.S. at 749 & n.1, 73 L. Ed. 2d at 1117 & n.1, 102 S. Ct. at 3350 & n.1.

Moreover, "pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography." Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act*, 17 Wake Forest L. Rev. 535, 545 (1981), as quoted in *Ferber*, 458 U.S. at 759 n.10, 73 L. Ed. 2d at 1124 n.10, 102 S. Ct. at 3355 n.10.

Accordingly, both courts have recognized that our legislative bodies are entitled to great leeway in the regulation of pornographic depictions of children. (*New York v. Ferber*, 458 U.S. at 749, 755-56, 73 L. Ed. 2d at 1117, 1121-22, 102 S. Ct. at 3350, 3353-54; *People v. Geever*, 122 Ill. 2d at 320-21.) The *Ferber* court went on to hold that the obscenity standard set forth in *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, would not be applied to cases of child pornography, stating that, "The *Miller* standard, like all general definitions of what may be banned as obscene, does not reflect the State's particular and more compelling interest in prosecuting those who promote the sexual exploitation of children." (458 U.S. at 760-61, 73 L. Ed. 2d at 1125, 102 S. Ct. at 3357.) In *Geever*, the Illinois Supreme Court held, in a passage quoted from *Ferber*:

"A trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that the sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole." *People v. Geever*, 122 Ill. 2d at 323.

Thus, the cases upon which defendant relies are not applicable to the case at bar. *People v. Gould* and *People v. Lerch* all deal with

*Miller's* obscenity standards. *Gould* involved a prosecution on an obscenity charge and not child pornography; *Lerch* was a child pornography case, but the statute applicable at the time incorporated the more demanding three-part obscenity standards formulated in *Miller*. (*People v. Hebel* (1988), 174 Ill. App. 3d 1, 527 N.E.2d 1367, *cert. denied* (1989), ___ U.S. ___, 103 L. Ed. 2d 848, 109 S. Ct. 1544.) As in *Gould, Ward v. Illinois* applied *Miller's* obscenity standards to a charge which did not involve child pornography. *People v. Biocic* is distinguishable in that the magazines in issue there were dedicated to expounding "the virtues of nudist living and to advancing nudism in our culture." The photographs were of "nudes engaged in normal activity or posed as a fully clothed person would pose for a photograph. No attempt was made to be suggestive." *People v. Hebel*, 174 Ill. App. 3d at 21-22.

In *People v. Walcher* (162 Ill. App. 3d 455), the court, in construing the child pornography statute, defined "lewd" as "obscene, lustful, indecent, lascivious, lecherous," and found that the pictures involved poses which were intentionally seductive and designed to excite sexual desire. The court stated that they "are staged and are not simply incidental pictures of partial nudity," and that they were lewd under the definition it had adopted. (*Walcher*, 162 Ill. App. 3d at 461.) The photographs were generally focused on young girls' genitals, including poses in which the girls were showing their genitals through their underwear, or spreading their legs to allow a clear view of the genital area.

█ In the present case, we find the photographs in exhibits 14, 15 and 16 to be lewd and that they fall into the categories mentioned by the *Walcher* court. Exhibit 14 has a format which is similar to an erotic adult magazine, including some fold-out pages similar to a center fold. The first pictures of exhibit 14 are entitled "Francoise" and focus in varying degrees on the breasts and genitals of the girl depicted. Indeed, one of these photos crops Francoise's head, back, and legs and focalizes on her partially draped but protuberant buttocks, while she assumes a reclining position. The next group of pictures is entitled "Natacha," and the camera concentrates prominently on the genitals of the girl depicted, showing her in various contorted gymnastic positions, offering unobstructed views of her genital region. One in particular has her in a squatting position, featuring an obtrusive display of her vagina. Moreover, like a good many other of the depicted children, she is nowhere near pubescence. The following pictures of young girls entitled "Nadia," "Virgine," "Sarah," "Chloe," and "Nancy" all focus eminently either directly or through transpar-

ent underwear, on the genitals of these girls, all of them in unabashedly erotic poses. Sarah and Chloe are both far from reaching puberty, yet this acts as no deterrent to the photographer's having Chloe pose in a state of dishabille in a clumsy imitation of the style of an adult erotic magazine.

Exhibit 15 is similar in format to exhibit 14 and includes photographs of a girl named "Vancienne," who is shown partially wrapped only in a fur with her genitals and breasts exposed. The next series of photographs is comprised of about 20 pictures in which the genitals of both prepubescent boys and girls are exposed. In more than one photo, a number of these nude children, male and female, are standing on their heads with their genitals strikingly displayed, while two girls are bent over, faces hidden, but the focal area is their buttocks and genital regions. In another photo, four girls who have not reached puberty, pose in the nude, hugging and kissing each other while making sure that their genitals are fully exposed to the viewer. There are also in these exhibits a large number of unnamed girls in the prepuberty stage who are depicted in the nude in various poses, revealing their genitals, including one in various stages of taking a bath and showering, and a couple of these photos are cropped to feature only the genital area. Another girl is photographed in front of a full length mirror, thus exhibiting both a frontal and rear view of this completely nude child of tender age. One child has her face completely draped but her breasts and genital area are fully exposed. This exhibit also includes pictures of a girl named "Lawrence," which do not include the girl's face, but rather focus specifically on the girl's vagina. Exhibit 16 is different in format, and also contains photographs of the genitals of very young children, although a rather lame attempt seems to have been made to give the book or magazines the aura of a nudist-centered publication.

Under the rationale of *Walcher*, it is clear beyond any doubt that the photographs in exhibits 14, 15 and 16 are lewd. Each exhibit contains photographs which focus on the genitals of young girls or boys, many of whom are mere tots. While the degree of focus may differ, there is no question but that the theme of these artfully crafted pictures is the same. These are not portraits which capture an uninhibited moment of adolescent spontaneity; the pictures are adroitly and dexterously posed, focusing on the breasts, vaginas, and buttocks of young girls. In fact, as already noted, some of these pictures show nothing more than the stomach, thighs and genitals of these children. Defendant's contention that these photographs are not lewd is devoid of any merit; the only "injustice" the trial court has done defendant is

to have described the photos for the record with remarkably unrestrained objectivity.

"While the production of pornographic materials is a low-profile, clandestine industry, the need to market the resulting products requires a visible apparatus of distribution. The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product." (*Ferber*, 458 U.S. at 760, 73 L. Ed. 2d at 124, 102 S. Ct. at 3356.) Thus, because of the societal concerns expressed in *Ferber* and *Geever*, making the burden of finding "child pornography" less stringent than that of "obscenity," we hold that the material in question is clearly "lewd," and the defendant's conviction is upheld.

Affirmed.

BILANDIC, P.J., and HARTMAN, J., concur.