THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN E. LEWIS, Defendant-Appellant.

Second District   No. 2—97—0983

Opinion filed June 16, 1999.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

The defendant, Stephen E. Lewis, appeals his conviction of child pornography (720 ILCS 5/11—20.1(a)(1)(vii) (West 1994)) and sentence of five years' imprisonment. We reverse.

■ The State charged the defendant with two counts of child pornography, alleging that between June 13 and October 21, 1995, the defendant (1) "knowingly photographed [J.T.], a child who he knew was under the age of 18 years, while she was depicted in a pose involving a lewd exhibition of her unclothed pubic area"; and (2) photographed J.T. "lewdly exhibiting and exposing the partially developed breast of [J.T.]" in violation of section 11—20.1(a)(1)(vii) of the Criminal Code of 1961 (Code) (720 ILCS 5/11—20.1(a)(1)(vii) (West 1994)). Section 20.1 (a)(1)(vii) of the Code provides in pertinent part:

"A person commits the offense of child pornography who:

(1) *** photographs *** any child whom he knows or reasonably should know to be under the age of 18 *** where such child *** is:

* * *

(vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals *** of the child or other person[.]" 720 ILCS 5/11—20.1(a)(1)(vii) (West 1994).

On the day of the trial, August 21, 1996, the State filed a motion to include certain evidence of the defendant's prior bad acts including an October 1995 incident in which the defendant, a postal worker, allegedly molested seven-year-old J.S. during his postal route in Glenview, Illinois; testimony from Robert Williams, a postal inspector, that, while discussing the Glenview incident, the defendant told Williams that he had a problem with his sexual desire for children and treated himself by masturbating to adult pornography when he felt "certain urges"; evidence that the defendant's mailbag contained adult pornographic material, a nude photograph of J.T.'s mother, and a

condom; evidence that J.T. told a police officer that in September 1996 the defendant had touched her "private" and told her that he wanted a nude picture of her; and evidence that J.T. later denied to a child advocate that the touching incident occurred and told the advocate that the defendant took the photograph by mistake.

The trial court allowed the State's motion in part, ruling that the evidence concerning the Glenview incident could be presented but that evidence that the defendant's mailbag contained adult pornographic material, a nude photograph of J.T.'s mother, and a condom was inadmissible. The trial court also stated that, if J.T. testified that the photograph of her was taken by mistake, the State would be allowed to impeach her with evidence that, in her original statement to the police, she did not say it was an accident. The trial court did not rule on the admissibility of the evidence that the defendant previously touched J.T.'s "private" or that the defendant acknowledged his alleged problem to Williams.

In response to the trial court's ruling, defense counsel stated that he would have the defendant execute a jury waiver. After a recess, defense counsel stated that based on the rulings the defendant was going to waive his right to a jury trial. In response to the trial court's question regarding the defendant's decision to waive his right to a jury trial, defendant answered "[b]ased on your rulings I see no other choice." The defendant then signed a jury waiver form.

At trial, David Skaja, a Glenview police officer, testified that on October 21, 1995, at about 6:30 a.m., at the Glenview post office, the defendant agreed to accompany Skaja and Glenview police officer Jeff Ader to the Glenview police station in connection with an incident that had occurred on his postal route the previous week. The defendant left his postal bag in the postmaster's office at the post office before leaving with Skaja. Skaja testified that he was investigating allegations:

> "[T]hat a seven-year-old (J.S.) had told her mother that the postman known to her as Steve had exposed what she said was his wiener to her and had also placed her hands upon Steve's wiener and also placed Steve's wiener against her stomach on top of her clothes."

After the defendant was given his *Miranda* warnings, the defendant said that he did not want to talk to the police. Skaja left the interview room. When Skaja returned to see if the defendant needed anything, the defendant said he wanted to talk about the alleged incident. According to Skaja, the defendant stated that on his postal route on October 14, 1995, a very precocious little girl came to his mail truck, grabbed him by the waist, and tried to pull him out of the

truck. He told the girl to leave, and she and her sister went away. Skaja told the defendant that J.S. told Skaja that the defendant showed her pictures of naked women and she saw the defendant's wiener and that the defendant told J.S. that his zipper was broken and he did not wear underpants because he had a rash. The defendant explained to Skaja that he did not show J.S. photographs of naked women but she may have seen the Playboy magazine he carried in his postal bag. The defendant also told Skaja that he had pants with a broken zipper but had not worn them that day and that he got the rash while in the service overseas. The defendant denied touching J.S. and her sister.

According to Skaja, after Assistant State's Attorney Mary Roberts gave the defendant *Miranda* warnings, the defendant repeated the information he gave to Skaja and again denied touching J.S. and her sister. Pursuant to a search warrant defendant's mailbag was searched. Among the items found in the bag was the photograph at issue in this case (People's exhibit No. 5), which depicts J.T. standing naked in front of a bed, and a nude photo of J.T.'s mother. When questioned about the photo, the defendant stated that he found it on his postal route.

Pursuant to another search warrant, Skaja found the address of the Starlite Restaurant in Zion, Illinois, in the defendant's address book. The manager of the restaurant identified J.T. and her mother, Joan T., from the photos found in the defendant's mailbag. Skaja stated that he spoke to Joan T. at her home in Zion, Illinois. Joan confirmed that the girl in People's exhibit No. 5 was her daughter, J.T.

Postal inspector Robert Williams testified that while at the police station the defendant asked Williams if J.S. said that the defendant touched her with his penis. When Williams replied, "yes," the defendant became upset, began to cry, and said that he did not touch the girl but no one would believe him because of his record. Williams told the defendant he found the photos of J.T. and J.T.'s mother. The defendant admitted to Williams that he had a problem with young children and sought therapy with psychiatrists and therapists but stopped treatment out of fear that the doctors would tell the police. The defendant told Williams that he treated himself "by viewing depictions of adult pornography and masturbating to those depictions."

Mark Pleasant, an investigator with the Children's Advocacy Center, spoke with J.T. on May 22, 1996, at her school. J.T. told Pleasant that the defendant was a friend of her mother's, lived in their home, and gave them money and bought them things because he knew J.T.'s father was dead and her mother had a hard time affording things.

On cross-examination, Pleasant testified that J.T. stated that the photo incident occurred after June 1, 1995, her eleventh birthday. Her

mother was at the store, and her sister was in another room. J.T. had been swimming and decided to take a shower. She went into the bathroom and remembered that she left a towel on her mother's bed. As she went to get the towel, the defendant jumped out and took her picture. The defendant said "oh sh--" and dropped the camera. He promised to get rid of the picture and later told her he had gotten rid of it. J.T. said she was concerned because she knew the defendant might get in trouble for taking a naked picture of a minor. J.T. told Pleasant that the picture was taken by accident, that the defendant never touched her inappropriately, and that she only told Zion police officer Wayne Brooks that the defendant had previously touched her to get out of the interview with him.

Officer Brooks testified that on December 21, 1995, he interviewed J.T. for 30 to 45 minutes at the Lake County Children's Advocacy Center. A child advocate was present. J.T. told Brooks that the defendant told her that he wanted to take a picture of her with no clothes on. J.T. removed her clothes and stood in her mother's bedroom, next to a night stand, and the defendant took the picture and left the room. J.T. asked the defendant what he was going to do with the picture and the defendant said he would throw it away. Later, he told her that he had thrown it away. On cross-examination, Brooks stated that when he first interviewed J.T. at her home J.T. told him the photo was taken by accident. According to Brooks, J.T. stated that the defendant previously touched her vagina.

The alleged victim, J.T., testified that she was born on June 1, 1984, the defendant was her mother's boyfriend, and she had known him for about one year. J.T. stated that, near her birthday in 1995, the defendant took the picture at issue while she was preparing for a bath. She had removed her clothes in the bathroom and went into her mother's bedroom to get a towel J.T. had left there. She further testified:

> "I was turning around into the hall and there was—just in the picture it shows the dresser. At least it should. I was turning around. [The defendant] was behind the doorway in the bathroom. I went in the bathroom to make the bathroom water stop so it wouldn't overflow. I came out and he snapped the picture and I went—I was just scared, you know. Well, not really scared, but I was basically shocked after the picture was taken. Got my towel, ran into the bathroom and took a bath."

J.T. admitted telling Pleasant that after taking the picture the defendant said "sh--" and ran towards the hall. J.T. told Pleasant that the defendant took the picture by mistake and later told her he had thrown the picture away.

The prosecutor asked J.T. whether she previously told Officer Brooks that the defendant took her picture one or two months after the defendant had touched her private parts in September. J.T. stated that on that night the defendant came into her room where she was sleeping on the floor of a closet and "put his hands on my stomach, leaned over, gave me a kiss on the cheek and said good night and then went into [*sic*] see my mom."

J.T. denied that the defendant touched her inappropriately and denied telling Brooks that the defendant asked to take a naked picture of her or that she removed her clothes and stood by the bed. However, on redirect examination, J.T. admitted that she told Brooks that the defendant put one of his fingers next to her "private part," but this was untrue. J.T. explained that she only said this because she believed that was what Brooks wanted to hear and she wanted to leave after $2^1/2$ hours of questioning.

Over defense counsel's objection, J.S., the girl allegedly molested by the defendant in Glenview, testified. Before her testimony, she stated that she understood the difference between the truth and a lie, that she would get in trouble for telling a lie, that it was very important to tell the truth in front of a judge, and that she promised to tell the truth. The judge found J.S. qualified to testify. No oath was administered to J.S. Defense counsel objected to J.S.'s testimony based on relevance but did not object on the basis of the lack of an oath.

J.S. identified the defendant as her former mailman. She stated that she had seen him often and that he was "sort of" her friend. The last time J.S. saw the defendant, he was wearing mail clothes, his pants were unzipped, he wore no underwear, and his "private" was naked and outside his pants. J.S. testified that the defendant touched her stomach and took her hand and made her touch his "private." J.S. had her clothes on at the time. J.S. rode her bike home and told her mother. On cross-examination J.S. stated that the defendant's "private" was already out when J.S. rode up on her bike and that the defendant was standing next to his truck. However, J.S. then stated that the defendant was sitting in his truck looking at a picture of a grown lady when she first saw him. J.S. did not remember whether the defendant told her to go away, whether she got off her bike and approached the mail truck, or whether she grabbed the picture and some mail. When asked if she remembered what happened that day she replied "no." J.S. also stated that she had seen the defendant's "private" on one other occasion.

The defendant did not testify. The only evidence presented by the defense was a stipulation that Karen Braunweiler of the Northwest Cook County Children's Advocacy Center would testify that J.S. told

her that she stood behind the defendant's mail truck and took his mail, the defendant chased J.S. away, and J.S. saw the defendant's "private" every day.

After arguments, the trial court found the defendant guilty of both counts of child pornography. The trial court found that the defendant took the picture and that the picture was lewd.

The trial court denied the defendant's motion for reconsideration or a new trial. However, the trial court agreed with the defendant's argument regarding the one-act-one-crime issue. Therefore, the trial court entered judgment on count one only and sentenced the defendant to five years' imprisonment.

On December 6, 1996, defense counsel told the trial court that, pursuant to the defendant's complaints, he had been contacted by the Attorney Registration and Disciplinary Commission (ARDC). Although the ARDC found the complaint groundless, defense counsel believed it gave rise to a conflict and asked the court to appoint another attorney for the defendant. The court granted the request and appointed Patrick Quilty to represent the defendant.

On December 13, 1996, the defendant filed a *pro se* motion for a new trial alleging that he was denied the effective assistance of trial counsel. On December 29, 1996, defense counsel Quilty filed a motion to reconsider sentence. The trial court then granted defense counsel Quilty's petitions for transcripts of the trial and sentencing hearing. On August 28, 1997, the defendant filed a *pro se* motion to dismiss due to lack of prosecution. Subsequently, defense counsel Quilty filed an amended motion for new trial stating, *inter alia,* that there was no merit to the defendant's claims that his trial counsel was ineffective. Defense counsel Quilty provided a detailed analysis of the defendant's complaints and requested that a notice of appeal be filed on the defendant's behalf.

The trial court denied the defendant's motion alleging ineffective assistance of counsel and the motion to reconsider sentence. A notice of appeal was filed on September 19, 1997. The defendant then filed a *pro se* motion to request a hearing as to the ineffective assistance claim, reiterating his complaints regarding trial counsel and complaining of defense counsel Quilty's failure to pursue the ineffectiveness claim. The trial court denied the defendant's motion, stating that it lacked jurisdiction because the notice of appeal had already been filed.

On appeal, the defendant first argues that the trial court failed to ensure that the defendant knowingly waived his right to a jury trial. The defendant asserts that defense counsel alone decided to waive the defendant's right to a jury. The State argues that the record clearly shows that the defendant knowingly waived his right to a jury. We agree with the State.

■ Initially, we note that the defendant failed to raise this issue in his posttrial motion. However, because of the importance of the argument, we will address the merits. See *People v. Mueller*, 281 Ill. App. 3d 1, 3 (1996).

■ "Every person accused of an offense shall have the right to a trial by jury unless (i) understandingly waived by defendant in open court[.]" 725 ILCS 5/103—6(i) (West 1994). The determination of whether a defendant understandingly waived his right to a jury trial turns on the facts and circumstances of each particular case. *People v. Lake*, 297 Ill. App. 3d 454, 458 (1998). A defendant is deemed to have acquiesced to a jury waiver if the defendant was present when the trial court and defense counsel discussed the jury trial waiver and the defendant did not object to the waiver. *People v. Dockery*, 296 Ill. App. 3d 271, 276 (1998). Further, although a written jury trial waiver alone does not demonstrate the defendant's understanding, a signed written waiver lessens the probability that the waiver was not knowingly made. *Dockery*, 296 Ill. App. 3d at 276.

■ In the case at bar, the record contains ample evidence that the defendant understandingly waived his right to a jury trial. After the trial court denied the defendant's motion to suppress evidence of the defendant's prior bad acts, defense counsel stated:

"For the record, based on your ruling I need a moment to talk to my client now. I am going to have him execute a jury waiver. There is no way I can take this in front of a jury."

Recognizing that defense counsel was emotional, the trial court advised defense counsel to take time to discuss the matter with the defendant and took a recess. When the proceedings resumed, the following colloquy took place in open court and in the presence of the defendant.

"[Defense Counsel]: Judge, I have had the opportunity to speak with my client, and again based on your rulings we are going to at this time waive jury because I just don't see how I can take this before a jury with that evidence coming in because I think the prejudicial value will outweigh the probative value so far that there is no possible way that when a jury hears about the Glenview case that they can make a ruling on whether or not the picture is pornographic or not.

THE COURT: Mr. Potkonjak—

[Defense Counsel]: Judge, all I say is the photograph's on trial.

THE COURT: —that in any way your client can be forced in any way to take a bench trial, and I am not forcing him in that respect and I will ask him if that's his free choice. Is that correct, Mr. Lewis?

[Defendant]: I see no other choice, Your Honor.

THE COURT: What?

[Defendant]: I see no other choice, Your Honor.

THE COURT: Okay. That's your choice.

[Defendant]: Based upon all your rulings I see no other choice.

THE COURT: Fine, Mr. Lewis. Mr. Burke [the prosecutor] are you ready to proceed?"

The defendant subsequently signed a jury trial waiver form. After the trial court denied the defendant's motion to reconsider the motion to suppress, defense counsel stated:

"[L]ike I said the prejudicial effect was such that I saw no alternative because there was no way when you bring this girl in to say this guy touched my penis [*sic*] no matter what's depicted in the picture, I'm sorry. Twelve people from this county are going to say he's guilty[.]"

In light of the facts and circumstances of this case, it is clear that the defendant knowingly, understandingly, and voluntarily waived his right to a jury trial. The defendant's argument that defense counsel, alone, decided to waive a jury trial is not supported by the record. The record reveals that the defendant was present in court when defense counsel discussed the jury waiver with the trial court and waived this right on behalf of the defendant. Thus, the defendant acquiesced to the jury waiver. The trial court then discussed the issue directly with the defendant, and the defendant himself stated that he wished to waive his right. In addition, the defendant signed a jury waiver form which advised him that he was entitled to a jury trial, explained what a jury is, and what it would decide. Thus, the defendant's argument that he did not understandingly waive his right to a jury is without merit.

The defendant also argues that the trial court improperly admitted certain evidence that tended to show that he had the propensity to commit crime, namely, evidence that (1) the defendant told a postal inspector that he "had a problem" related to a sexual interest in children; (2) the defendant touched J.T.'s vaginal area on an occasion separate from the photographing incident; and (3) five months after the photo was taken, the defendant committed acts of aggravated criminal sexual abuse against another child. The State argues that this evidence was relevant to prove the defendant's intent and lack of mistake. We agree with the defendant.

■ It is well established that the admissibility of evidence is dependent upon a showing that it is legally relevant. *People v. Hope*, 168 Ill. 2d 1, 23 (1995). "Evidence is relevant if it has any tendency to make the existence of a material fact more or less probable than it would be without the evidence." *People v. Pursley*, 284 Ill. App. 3d 597, 603

(1996). Evidence of prior acts of misconduct is not admissible to show a defendant's propensity to commit a crime. *People v. Houston*, 288 Ill. App. 3d 90, 97 (1997). However, such evidence is admissible if relevant for some other purpose, but only if the probative value outweighs its prejudicial effect. *People v. Burgess*, 176 Ill. 2d 289, 307 (1997). A trial judge's decision to admit evidence will be not be disturbed absent an abuse of discretion. *Burgess*, 176 Ill. 2d at 307.

■ To sustain a charge of child pornography pursuant to this section, the State must prove (1) the defendant photographed a child under the age of 18; (2) the defendant knew or reasonably should have known that the child was under the age of 18; and (3) such child was depicted or portrayed in a pose, posture, or setting involving a lewd exhibition of the pubic area or partially developed breast of the child, if that child is female. 720 ILCS 5/11—20.1(a)(1)(vii) (West 1994); Illinois Pattern Jury Instructions, Criminal, No. 9.30 (3d ed. 1992). The determination of whether a photo is lewd can be determined by looking at the photo itself. See *People v. Lamborn*, 185 Ill. 2d 585, 590 (1999); *People v. Schubert*, 136 Ill. App. 3d 348, 353-54 (1985).

■ The trial court ruled, and the State argues, that the evidence at issue was relevant to show that the defendant took the photo with the intent of producing a lewd exhibition of J.T.'s genitals. However, the defendant's subjective intent in taking the photo was not relevant or material to establishing this crime. *Lamborn*, 185 Ill. 2d at 590. Nothing in the statute requires the State to prove the defendant's subjective intent in taking the photo. See 720 ILCS 5/11—20.1(a)(1)(vii) (West 1994). Accordingly, the trial court abused its discretion by admitting the evidence at issue.

The State argues that the evidence regarding the defendant's intent was necessary to show that the defendant did not take the photograph by mistake or accident. However, the record reveals that the State, and not the defendant, first raised this issue at trial. During direct examination of J.T., the prosecutor elicited testimony from J.T. regarding an incident when the defendant allegedly touched J.T. This testimony was elicited before the defendant asked any witness whether J.T. had told a police detective that the defendant took the picture by mistake. Thus, the improper-touching incident was not relevant when it was first admitted into evidence. Further, even if it was relevant, it should have been excluded, because its prejudicial effect far outweighed its probative value. See *Burgess*, 176 Ill. 2d at 307.

The State cites *People v. Moore*, 80 Ill. App. 3d 996 (1980), to support its argument that the defendant's statement regarding his sexual desire for children was relevant. In *Moore*, this court held that the trial court properly admitted the defendant's prior oral statement: " 'I

always do those things when I'm drunk.' " *Moore*, 80 Ill. App. 3d at 1000. The defendant made this statement as part of his confession to the crimes with which he was charged: rape and murder. This court reasoned that the statement was admissible because it is "an integral part of the defendant's acknowledgment of his guilt in connection with his confession of this particular crime" *Moore*, 80 Ill. App. 3d at 1004. The statement at issue in this case was not part of a confession of the defendant's guilt of the crime with which he was charged. Rather, the defendant was discussing his general problem with his sexual desire for children. Unlike the defendant in *Moore*, the defendant in this case did not relate his problem to the charge at issue. Thus, *Moore* is not controlling.

In addition, the State's citation to *People v. Partin*, 156 Ill. App. 3d 365 (1987), to support its argument regarding the admissibility of the prior bad-touching incident with J.T. and the Glenview incident with J.S. does not support its position. In *Partin*, the defendant was charged with indecent liberties with a child and child pornography. The defendant denied that the crime occurred and denied that he was the perpetrator. The appellate court held that evidence of prior bad acts was admissible to show *modus operandi* (identification) as to the indecent liberties charge *only*. *Partin*, 156 Ill. App. 3d at 371. Further, unlike *Partin*, identification was not an issue in this case. Thus, *Partin* is not controlling.

The State also cites *People v. Schubert*, 136 Ill. App. 3d 348 (1985), for the proposition that the circumstances in taking the photograph are relevant to determine whether a photo is lewd. *Schubert* does not support the State's argument. In *Schubert*, the evidence that the defendant read pornographic magazines, that it was impossible not to see the photos in the magazines, and that the defendant answered ads seeking photos of men refuted the defendant's argument that he did not know the contents of the allegedly pornographic material at issue. *Schubert*, 136 Ill. App. 3d at 354-55. The evidence was not considered when determining whether the material in question was indecent. In fact, the court stated that the issue of whether a photo is obscene can be determined by the photograph alone. *Schubert*, 136 Ill. App. 3d at 353-54. Further, the evidence at issue in this case involves prior bad acts, which were not part of the circumstances of taking the photograph. In addition, the State's argument was recently rejected in *People v. Lamborn*. In *Lamborn* the supreme court reviewed five photographs to determine whether they were lewd within the meaning of the child pornography statute. The court held that neither the circumstances surrounding the taking of the photos nor the defendant's intent in taking the photos was relevant to the determination of

whether the photos were lewd. *Lamborn*, 185 Ill. 2d at 590. Thus, the trial court in this case improperly admitted irrelevant evidence of the defendant's prior bad acts.

Next, the defendant argues that the photo at issue was not lewd. The defendant claims that the photo depicts mere nudity and does not depict J.T. in a sexually suggestive or unnatural pose or setting. The defendant urges this court to review this issue *de novo*. The State argues that it established that the photo was lewd beyond a reasonable doubt.

■ Our supreme court recently announced in *Lamborn* that the standard for reviewing whether a photograph is lewd within the meaning of the child pornography statute is *de novo*. Thus:

> "We must review the photographs themselves and determine whether those photographs are lewd under the child pornography statute. We are not faced with reviewing the sufficiency of the evidence." *Lamborn*, 185 Ill. 2d at 590.

We note that we believe the supreme court will eventually revisit this issue and apply the traditional standard of review. Otherwise, the supreme court's approach in *Lamborn* will logically lead to *de novo* review of every criminal case which includes the interpretation of statutory language and every case where the evidentiary facts are uncontroverted. Further, it may require a catalogue of photos which are lewd and not lewd so that there can be a consistent exercise of *de novo* review and so the decision regarding whether a photo is lewd will not be left to the subjective moral standards of appellate court judges. Until the supreme court alters its position, we must apply the *de novo* standard of review to determine whether a photograph is lewd under the child pornography statute.

■ Lewdness is defined as " '[o]bscene, lustful, indecent, lascivious, [or] lecherous.' " *Lamborn*, 185 Ill. 2d at 591, quoting *People v. Walcher*, 162 Ill. App. 3d 455, 460 (1987). Lewdness must be construed in light of the grave concerns regarding the sexual exploitation of children and the attendant harm it causes the children involved in child pornography. *People v. Johnson*, 186 Ill. App. 3d 116, 119-21 (1989). Further, a trier of fact need not find that a photo appeals to the prurient interest of the average person but must determine whether a reasonable person would believe the photo was designed to elicit a sexual response in a pedophile viewer. See *Lamborn*, 185 Ill. 2d at 589; *People v. Hebel*, 174 Ill. App. 3d 1, 21 (1988). The determination of lewdness is to be made based upon the overall content of the visual depiction. *Hebel*, 174 Ill. App. 3d at 20. Further, "in such situations the pictures speak for themselves." *Schubert*, 136 Ill. App. 3d at 354.

■ The following factors are relevant in determining whether a photo depicts a lewd exhibition of genitals:

"(1) [W]hether the focal point of the visual depiction is on the child's genitals; (2) whether the setting of the visual depiction is sexually suggestive, *i.e.*, in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Lamborn*, 185 Ill. 2d at 592.

A photo need not involve all of these factors to be a lewd exhibition of genitals. *Lamborn*, 185 Ill. 2d at 592. Further, photos that display the genitals of children may be lewd if the photos do not "merely capture an 'uninhibited moment of adolescent spontaneity.' " *Lamborn*, 185 Ill. 2d at 591-92, quoting *Johnson*, 186 Ill. App. 3d at 122.

•■ After reviewing the photo in question in this case, we determine that it is not lewd. The photo at issue in this case appears to be an example of "nudity without lewdness" and thus does not constitute child pornography. See *Lamborn*, 185 Ill. 2d at 591. Five of the six factors listed in *Lamborn* weigh against a determination of lewdness. Regarding the first factor, the focal point of the photo is not on the child's genitals. The photo depicts J.T.'s entire body, with the exception of her lower legs. Regarding factor two, although the setting is a bedroom, this fact is not used to suggest sexual activity. A made-up bed appears in the background without any indication that the bed has any sexual meaning in the photo. Regarding the third factor, J.T.'s pose is not suggestive or unnatural. She stands with her arms at her side and her head straight ahead, slightly down. The fourth factor is the only one that weighs in favor of lewdness. J.T. is completely naked. However, the fifth and sixth factors weigh against a finding of lewdness. There is nothing in the photo that suggests sexual coyness or a willingness to engage in sexual activity. The child appears uncomfortable and embarrassed. Further, the photo does not appear to be designed to elicit a sexual response in an objective viewer. Although the photo depicts a naked child standing in a bedroom, she is not posed in a sexual manner, she is not wearing inappropriate attire, and the expression on her face is not sexual, inviting, or coy in any way. Thus, applying the *de novo* standard of review and six factors enunciated in *Lamborn*, we determine that the photo is not lewd.

We also note that under the sufficiency of the evidence standard no rational trier of fact could have found the photo lewd beyond a reasonable doubt.

The defendant also argues that several errors by his trial counsel deprived him of the effective assistance of counsel. Because we are reversing the defendant's conviction and sentence on other grounds, we need not address this argument.

The judgment of the circuit court of Lake County is reversed.

Reversed.

BOWMAN, P.J., and RAPP, J., concur.