NOTICE

Decision filed 03/10/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0559

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) | Appeal from the |
| ) | Circuit Court of |
| Plaintiff-Appellee, ) | Montgomery County. |
| ) | |
| v. ) | No. 02-CF-234 |
| ) | |
| JEFFREY R. WAYMAN, ) | Honorable |
| ) | John P. Coady, |
| Defendant-Appellant. ) | Judge, presiding. |

_____

PRESIDING JUSTICE STEWART delivered the opinion of the court:

Following a bench trial in the circuit court of Montgomery County, the defendant, Jeffrey R. Wayman, was convicted of one count of child pornography (720 ILCS 5/11-20.1(a)(1)(vii) (West Supp. 2001)) and one count of aggravated assault (720 ILCS 5/12-2(a)(13) (West 2000)). On appeal, the defendant argues as follows: (1) that the State failed to prove him guilty of child pornography beyond a reasonable doubt and could not have proved him guilty of that charge because no photographs were submitted in support of the charge; (2) that the State failed to prove him guilty beyond a reasonable doubt of aggravated assault; (3) that he was denied the effective assistance of counsel due to his attorney's failure to move to sever unrelated charges; and (4) that he is entitled to a $5-per-day credit against his fine for the 47 days he spent in custody prior to sentencing. The State concedes that the defendant is entitled to a $5-per-day credit against his fine for the 47 days he spent in custody prior to sentencing. We affirm the aggravated assault conviction, reverse the child pornography conviction, and remand for a new sentencing hearing.

1

FACTS

On October 18, 2002, the defendant was charged by information with two counts of child pornography (720 ILCS 5/11-20.1(a)(1)(vii) (West Supp. 2001)) and one count of aggravated assault (720 ILCS 5/12-2(a)(13) (West 2000)). The State alleged that the conduct giving rise to the child pornography charges occurred on or about September 28, 2001 (count I), and between October 2001 and June 2002 (count II). Both child pornography charges alleged that the defendant "knowingly photographed Jane Doe, a child that [the defendant] knew to be under the age of 18 years, while Jane Doe was depicted or portrayed in a pose or setting involving a lewd exhibition of her unclothed genitals, pubic area[,] and buttocks." "Jane Doe" is D.J.[1], who was the defendant's 10-year-old stepdaughter during the time period set forth in the information.

The case proceeded to a bench trial on April 1, 2005, with the court hearing additional evidence, allowing closing arguments, and announcing its decision, respectively, on May 3, 2005, July 14, 2005, and July 18, 2005. The parties stipulated to the chain of custody of physical evidence, that the investigating officer and D.J.'s mother could testify to statements made by D.J., and that witnesses could refer to their reports while testifying.

The State's first witness was A.B., D.J.'s mother and the defendant's wife at the time of the charges, but his ex-wife at the time of the trial. A.B. testified that when she was married to the defendant, D.J. lived with them, along with Do.J., A.B.'s son from a former marriage, and M.W., the son of A.B. and the defendant.

A.B. testified that in mid-October 2001, her mother called her at work. A.B. left work and went to her mother's house. There, D.J. told her that, two weeks earlier, the defendant had taken nude photographs of her after making her take off her clothes. D.J. told A.B. that

_____

[1]We will abbreviate the names of the alleged child victim and her family members in an effort to preserve their privacy.

2

she had not agreed to the defendant taking the photographs but that he had "forced her clothes off and told her to just stand in the bathroom so that he could take the pictures." A.B. and D.J. then went home, where A.B. found nude photographs of D.J. on the home computer located in the bedroom occupied by A.B. and the defendant (the master bedroom). After A.B. and D.J. viewed the photographs, A.B. deleted them.

The defendant's attorney objected to A.B. describing what she had seen on the computer, arguing that what she had seen was irrelevant unless the State was going to present the actual photographs. Defense counsel argued that the State could never prove that the defendant had taken photographs that constitute child pornography without introducing the actual photographs into evidence. The State responded that the defendant was charged "with taking the photographs, not necessarily possessing the photographs." The State argued that the court was not required to have the actual photographs in order to determine whether the defendant had taken photographs that fit the definition of child pornography. The State argued that the photographs could be described by a witness who had actually seen them and could identify their nature and content. The court overruled the defendant's objection and allowed A.B. to describe the photographs.

A.B. testified that she had seen four photographs of D.J. on the computer. The first photograph was a full frontal shot of D.J.'s nude body, taken in the bathroom connected to the master bedroom. A.B. testified that, in the first photograph, she could see "part of [D.J.'s] breast and her vaginal area." Although D.J. was attempting to cover herself, A.B. could still see all of her vaginal area, as there was "very little pubic hair to cover anything." A.B. described the second photograph as a full rear view of D.J. Again, she was completely naked, and she was looking back at the camera. D.J. told A.B. that the defendant "had her to look at the camera." A.B. testified that D.J.'s buttocks were completely shown in this photograph.

3

A.B. described the third photograph as follows: "Well, there was where he had cut the section of her vaginal area out and made its own picture." She testified that the defendant "[b]lew it up and made it its own picture." She testified that the entire photograph was of D.J.'s "vaginal area."

A.B. described the fourth photograph as a cropped, enlarged picture of D.J.'s buttocks only, similar to the third photograph, with the central focus of the picture being D.J.'s buttocks. A.B. did not explain how she concluded that the third and fourth pictures were modifications of the two photographs the defendant had taken, how she knew that the defendant had made the modifications, or how she knew that the images shown were parts of D.J.'s body.

After viewing and deleting the photographs, A.B. confronted the defendant. He acknowledged taking photographs and putting them on the computer, but he denied that he took them for any sexual purpose, claiming that they "were for art." A.B. told the defendant not to take any more photographs, but she did not contact the police or tell anyone else about the incident or the photographs. A.B. did not testify that the defendant acknowledged enlarging or modifying any of the photographs that had been taken and placed on the computer.

A.B. also testified about events that occurred between October 2001 and June 2002, which were relevant to the second child pornography count. The trial court acquitted the defendant of that charge. The evidence pertaining to that charge is only relevant to this appeal to the extent that it explains the circumstances that led to the aggravated assault charge.

A.B. testified that in June 2002, D.J. told her that she thought the defendant was taking photographs of her from outside her bedroom window while she was getting undressed. Based upon this information, A.B. again went to the home computer and found

4

"pictures that looked like they were taken from outside the window." She also found additional photographs that appeared to have been taken of D.J., partially nude, while she was asleep.

Two or three days after viewing these photographs, A.B. confronted the defendant and told him that she was going to leave and take their son, M.W., then 1½ years old, with her. After A.B. confronted the defendant about the photographs and told him she was leaving, they engaged in a "heated argument." A.B. testified that the defendant told her that he would not let her leave. A.B. then went into another room to get her belongings, and when she came back into the master bedroom, the defendant was sitting on the bed pointing a handgun at himself. At that time, M.W. was standing next to A.B. After seeing the defendant with the gun, A.B. did not say anything else. She picked up M.W. and "started out the door," and she stated, "[T]hat's when he shot the gun" three times. She testified that she felt like she "just had to get" her children and "get out, leave." She testified that she was concerned for her safety and that of her children and that he might use the gun on her, but she did not report the incident to law enforcement.

Later that day, she returned to the home and spent the night with the defendant. While there, she learned that he had shot the bullets into their marriage license, which was hanging on the master bedroom wall. She moved out the next day. A.B. testified that after she moved out, D.J. "needed some counseling" and that is when the Department of Children and Family Services (DCFS) and the Illinois State Police became involved.

Special Agent James D. Wolfe of the Illinois State Police testified that he became involved in the investigation of the defendant when DCFS contacted him on October 18, 2002. He interviewed A.B., who told him that on two occasions, she had found various nude photographs of D.J. on the home computer and that she had deleted those photographs. A.B. told Wolfe that she had seen photographs of D.J. on the computer in October 2001 and again

5

in late June 2002 but that she did not leave the residence with the children until July 2002 and that she did not contact the authorities until October 2002. A.B. did not contact the police. Instead, DCFS requested that the police investigate.

Wolfe also interviewed D.J., who told him that on September 28, 2001, while A.B. was away from home, she and the defendant were in the master bedroom and the defendant was on the computer playing "an airplane game." D.J. told Wolfe that the defendant forcibly removed her clothing, that he took nude photographs of her, that she did not consent to being photographed in the nude, and that she said "no" and screamed. D.J. told Wolfe that she saw the photographs of herself on the computer when her mother looked at them. He did not ask D.J. to describe any of the photographs.

Wolfe testified that he interviewed the defendant on October 25, 2002. The defendant admitted that he and A.B. had been in an argument, that he had threatened to kill himself when she told him she was leaving him, and that he had fired three shots from the handgun into the wall. The defendant told him that when he fired the gun, A.B. and M.W. were both in the bedroom and D.J. and Do.J. were outside.

The Illinois State Police computer crime team searched the defendant's house and vehicles while Wolfe interviewed the defendant, who initially denied taking any photographs of D.J. Later, he admitted the September 28, 2001, incident, in which he had removed D.J.'s clothing, taken photographs of her with a Polaroid camera, and scanned those photographs into the computer.

The defendant admitted to Wolfe that he had destroyed all of the Polaroid photographs by burning them and that he had deleted the photographs from the computer's recycling bin. He admitted that the photographs had existed, that he had taken the photographs in September 2001, and that he had put them on the computer. He told Wolfe that the photographs were for "art." Wolfe never saw any photographs of D.J. Consequently, he did

6

not show any photographs to the defendant, and the defendant never identified any photographs. The State offered no testimony that the defendant described the specific content of any of the photographs taken on September 28, 2001, or that he ever admitted having modified those photographs to create enlarged depictions of D.J.'s vaginal area and buttocks.

When the defendant admitted taking the photographs of D.J., he began to cry and appeared very remorseful to Wolfe. Wolfe testified that the defendant described his behavior as "sick."

Wolfe testified that among the items seized from the defendant's home were two computer towers, a keyboard, and a handgun, which A.B. identified as the gun the defendant used in the aggravated assault incident. The Illinois State Police computer forensic lab searched the hard drives of both computer towers but found no photographs of D.J. on either computer.

The defendant did not testify and offered no other evidence at the trial.

The trial court announced its verdict in open court, finding the defendant guilty of count I (child pornography) and count III (aggravated assault) and not guilty of count II (child pornography). The court explained the verdicts as follows:

"I am going to find the defendant not guilty of Count II. I am going to find the defendant [guilty] of Count I, of child pornography. By the way I am also finding him guilty of aggravated assault, the misdemeanor. In particular[,] the reason that I have found the defendant guilty of Count I is because of the[–]you recall that I refer to four pictures. One of those pictures, number three, was just the child's vaginal area. *** I am saying in my verdict is [sic] this picture is just the vagina of the ten[-] or eleven[-]year[-]old girl. At that time she was ten years of age. When it is just the child's vagina it passes any test for the[–]for what the Statute and case law requires for this

7

exhibition."

After the sentencing hearing, on September 20, 2005, the court sentenced the defendant to five years' imprisonment on count I to run concurrently with two years' imprisonment on count III. The court granted the defendant's motion to stay the prison sentence pending appeal. The court noted that if the reviewing court reversed the defendant's child pornography conviction, it should remand the case to the trial court for a new sentencing hearing on the aggravated assault conviction because the court considered the child pornography evidence when deciding what sentence to impose for aggravated assault. The defendant filed a timely notice of appeal.

ANALYSIS

I. Child Pornography Conviction

It is evident from the record that our able and experienced colleague in the trial court struggled throughout the proceedings below to analyze the evidence presented within the context of the specific charge contained in count I of the information. This case presents difficult and challenging issues, which the trial judge recognized and thoughtfully analyzed. Although we agree that the defendant's actions were repugnant, his child pornography conviction cannot stand unless the State proved his guilt, beyond a reasonable doubt, of the offense charged in count I of the information. We therefore begin with an analysis of the history and status of the offense of child pornography under Illinois law.

In *New York v. Ferber*, 458 U.S. 747, 757, 73 L. Ed. 2d 1113, 1122-23, 102 S. Ct. 3348, 3354 (1982), the United States Supreme Court held that child pornography, as defined in the New York statute, is a category of material that is not entitled to first amendment protection. The statute in question defined child pornography, generally, as a visual depiction of a child under the age of 16 engaged in a sexual act or a lewd exhibition of the genitals. *Ferber*, 458 U.S. at 751, 73 L. Ed. 2d at 1118-19, 102 S. Ct. at 3351. The Court

8

held that the obscenity standard enunciated in *Miller v. California*, 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607 (1973), does not apply to child pornography. "As a general rule, pornography can be banned only if obscene, but under *Ferber*, pornography showing minors can be proscribed whether or not the images are obscene \*\*\*." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 240, 152 L. Ed. 2d 403, 414, 122 S. Ct. 1389, 1396 (2002). Thus, "[a] trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole." *Ferber*, 458 U.S. at 764, 73 L. Ed. 2d at 1127, 102 S. Ct. at 3358. The *Ferber* Court reasoned that child pornography is a crime against children because using children in the production of pornography is harmful to the children depicted and that distributing those materials is intrinsically related to child sexual abuse. *Ferber*, 458 U.S. at 757-60, 73 L. Ed. 2d at 1122-25, 102 S. Ct. at 3354-56. Thus, the Court held that states may validly regulate materials that "visually depict sexual conduct by children below a specified age" (emphasis omitted), so long as "[t]he category of 'sexual conduct' proscribed [is] suitably limited and described" and "some element of scienter on the part of the defendant" is required. *Ferber*, 458 U.S. at 764, 765, 73 L. Ed. 2d at 1127, 1127, 102 S. Ct. at 3358, 3358.

When *Ferber* was decided, the Illinois child pornography statute defined the offense in obscenity terms. Ill. Rev. Stat. 1981, ch. 38, par. 11-20a. The Illinois General Assembly acted promptly after *Ferber* and amended the child pornography statute to conform to the principles set forth in that decision. See Ill. Rev. Stat. 1983, ch. 38, par. 11-20.1. Although various amendments have been made, the type of conduct prohibited by the statute remains substantially the same. The version of the Illinois child pornography statute in effect at the relevant time provided, in pertinent part, as follows:

"(a) A person commits the offense of child pornography who:

9

(1) films, videotapes, photographs, or otherwise depicts or portrays by means of any similar visual medium or reproduction or depicts by computer any child whom he knows or reasonably should know to be under the age of 18 *** where such child *** is:

(i) actually or by simulation engaged in any act of sexual intercourse with any person or animal; or

(ii) actually or by simulation engaged in any act of sexual contact involving the sex organs of the child *** and the mouth, anus, or sex organs of another person or animal; or which involves the mouth, anus[,] or sex organs of the child *** and the sex organs of another person or animal; or

(iii) actually or by simulation engaged in any act of masturbation; or

(iv) actually or by simulation portrayed as being the object of, or otherwise engaged in, any act of lewd fondling, touching, or caressing involving another person or animal; or

(v) actually or by simulation engaged in any act of excretion or urination within a sexual context; or

(vi) actually or by simulation portrayed or depicted as bound, fettered, or subject to sadistic, masochistic, or sadomasochistic abuse in any sexual context; or

(vii) depicted or portrayed in any pose, posture[,] or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks, or, if such person is female, a fully or partially developed breast of the child or other person[.]"  720

10

ILCS 5/11-20.1(a)(1) (West Supp. 2001).

It is evident that the foregoing statute prohibits the knowing visual depiction of children *engaged in sexual conduct*, including any "lewd exhibition" of the "genitals, pubic area, buttocks, or *** breast" of a child. 720 ILCS 5/11-20.1(a)(1)(vii) (West Supp. 2001). It is clear from the statute that the touchstone of child pornography is the sexual nature of the portrayal. Thus, "[n]udity without lewdness is not child pornography." *People v. Lamborn*, 185 Ill. 2d 585, 594, 708 N.E.2d 350, 355 (1999). It is the *visual* depiction that is prohibited, and "courts must apply an objective standard of review in determining whether material constitutes child pornography." *Lamborn*, 185 Ill. 2d at 597, 708 N.E.2d at 357. Consequently, the defendant's subjective intent in taking a photograph is not relevant or material to establishing the crime of child pornography, and that evidence is inadmissible. *People v. Lewis*, 305 Ill. App. 3d 665, 675, 712 N.E.2d 401, 408 (1999). A defendant's innocent intent (*e.g.*, taking photographs for "art") will not protect him from a child pornography charge if the visual depictions fall within the statutory definition. Likewise, "whether [the] defendant was aroused by the photographs is irrelevant." *Lamborn*, 185 Ill. 2d at 594, 708 N.E.2d at 355.

It is also apparent from an examination of the statute that the types of visual depictions proscribed in the first six subsections of the statute (720 ILCS 5/11-20.1(a)(1)(i) through (a)(1)(vi) (West Supp. 2001)), prohibiting the portrayal of children involved in sexual activity, are generally more specific, while the depictions proscribed in the final subsection (720 ILCS 5/11-20.1(a)(1)(vii) (West Supp. 2001)), prohibiting any "lewd exhibition," are more difficult to define. As a result, our courts of review have frequently struggled to determine whether particular depictions of children were "lewd" within the meaning of the statute. See, *e.g.*, *Lamborn*, 185 Ill. 2d 585, 708 N.E.2d 350 (photographs of two teenage girls standing in knee-high water with their breasts exposed while swimming were not lewd,

11

but photographs of the fully naked defendant, with a partially erect penis, with his arm around the same partially nude teenage girls, violated the statute); *People v. Sven*, 365 Ill. App. 3d 226, 848 N.E.2d 228 (2006) (a surreptitiously recorded videotape of a nude teenage girl bathing was lewd within the meaning of the statute); *Lewis*, 305 Ill. App. 3d 665, 712 N.E.2d 401 (a photograph of a nude 11-year-old girl standing in a bedroom was not lewd); *People v. Walcher*, 162 Ill. App. 3d 455, 515 N.E.2d 319 (1987) (multiple photographs of teenage girls in obviously posed and intentionally seductive positions were lewd).

In *Lamborn*, the Illinois Supreme Court cited with approval the *Walcher* court's definition of "lewd" as " ' "[o]bscene, lustful, indecent, lascivious, lecherous." ' " *Lamborn*, 185 Ill. 2d at 591, 708 N.E.2d at 354 (quoting *Walcher*, 162 Ill. App. 3d at 460, 515 N.E.2d at 323 (quoting Black's Law Dictionary 817 (5th ed. 1981))). The *Lamborn* court also cited with approval six factors courts have considered:

"[O]ther courts have considered the following factors in assessing whether a visual depiction of a child constitutes the lascivious or lewd exhibition of the genitals: (1) whether the focal point of the visual depiction is on the child's genitals; (2) whether the setting of the visual depiction is sexually suggestive, *i.e.*, in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer. [Citations.] The visual depiction need not involve all of these factors to be considered lewd. [Citations.] Rather, the determination of whether the visual depiction is lewd will involve an analysis of the overall content of the depiction, taking into account the age of the minor. [Citations.] This determination must therefore be made on a case-

12

by-case basis." *Lamborn*, 185 Ill. 2d at 592-93, 708 N.E.2d at 354-55. Although the *Lamborn* case specifies "genitals" as the part of the body under consideration in that case, it is clear that, in Illinois, child pornography can extend to the pubic area and buttocks of any child and to the breasts of a female child. 720 ILCS 5/11-20.1(a)(1)(vii) (West Supp. 2001).

Count I of the information in this case charges the defendant with child pornography in that "on or about September 28, 2001," he "knowingly photographed Jane Doe, a child that [he] knew to be under the age of 18 years, while Jane Doe was depicted or portrayed in a pose or setting involving a lewd exhibition of her unclothed genitals, pubic area[,] and buttocks." As we must, we will analyze the evidence presented within the context of that particular charge.

## A. *Necessity of Photographs*

We begin by analyzing the issue as presented by the defendant–whether it is possible for a person to be convicted of child pornography when the trier of fact does not have any photographs to review. This appears to be an issue of first impression in Illinois. The defendant argues that in order to prove him guilty of child pornography, the State was required to submit photographs for the fact finder, in this case the judge, to review. The defendant maintains that Illinois case law mandates that the question of whether one has committed child pornography depends upon a review of the photographs themselves, without which no conviction can ever stand. He argues that the Illinois Supreme Court established that requirement in *Lamborn*, 185 Ill. 2d 585, 708 N.E.2d 350.

The defendant points out that, in *Lamborn*, the court stated, "We must review the photographs themselves and determine whether those photographs are lewd under the child pornography statute." *Lamborn*, 185 Ill. 2d at 590, 708 N.E.2d at 354. The defendant argues that Illinois case law mandates that a child pornography conviction is impossible without the

13

introduction of the photographs or other visual depictions themselves. The defendant is correct that the case law includes many references to the court's need to review the photographs. In addition to *Lamborn*, the defendant relies upon *Sven*, 365 Ill. App. 3d 226, 848 N.E.2d 228; *People v. Normand*, 215 Ill. 2d 539, 831 N.E.2d 587 (2005); and *People v. Schubert*, 136 Ill. App. 3d 348, 483 N.E.2d 600 (1985). We do not find, however, that any of these cases or any other case or statute establishes a rule that a defendant can never be convicted of child pornography unless the actual visual depictions are available as evidence. Rather, it appears that child pornography cases are rarely prosecuted without the actual visual depictions, likely due to the understanding of most prosecutors that proving the charge is extremely difficult without those depictions. Clearly, if the court is presented with the actual visual depictions, it is necessary for the trier of fact and court of review to view and consider them. Nevertheless, if the actual visual depictions are unavailable, through no fault of the State, there is no reason to preclude prosecution if the State can otherwise prove the defendant's guilt beyond a reasonable doubt.

In reaching this conclusion, we find *United States v. Villard*, 885 F.2d 117 (3d Cir. 1989), to be persuasive. *Villard* is one of the cases upon which the court relied in *Lamborn*. *Lamborn*, 185 Ill. 2d at 592-94, 708 N.E.2d at 354-56. *Villard* is significant because it involves facts similar to those presented in this case. In *Villard*, the court of appeals described the issue as "whether sufficient evidence was presented to allow the jury to determine that what the defendant transported was actually child pornography, given that the photographs at issue were unavailable and the only evidence as to their contents consisted of the testimony of a witness who had seen the photographs." *Villard*, 885 F.2d at 118. The *Villard* court considered the testimonial descriptions of the photographs, applied the same six factors adopted by the supreme court in *Lamborn*, and concluded that those descriptions did not provide sufficient evidence to prove beyond a reasonable doubt that the images

14

amounted to child pornography. *Villard*, 885 F.2d at 122, 126. The court stated:

> "Our holding does not necessarily preclude the government from ever supporting a finding of lasciviousness solely by introducing testimony describing photographs, without the actual photographs in evidence (although our view of such cases is circumspect). The testimony in this case, however, lacked sufficient detail in many important respects[] and raised the distinct possibility that the jury may have made a finding of lasciviousness based on conjecture or imagination rather than fact." *Villard*, 885 F.2d at 125-26.

In essence, the court in *Villard* allowed the same procedure allowed by the trial court in this case: because the photographs were not available, the witness was allowed to describe the images depicted. We adopt the same rule: the State should not be precluded from presenting evidence that the crime of child pornography has been committed if the photographs or other depictions are unavailable through no fault of the State; rather, whatever evidence is available to describe the photographs should be submitted to the trier of fact, who can then decide whether that evidence is sufficient for a conviction. Applying that rule, we do not find that the State failed to prove the defendant guilty of child pornography merely because its case rested upon testimony about the photographs rather than a consideration of the photographs themselves.

### B. *Standard of Review*

Before we can consider whether the testimonial evidence was sufficient to sustain the defendant's conviction, we must first determine the appropriate standard of review. In *Lamborn*, the Illinois Supreme Court adopted a *de novo* standard of review in determining whether alleged child pornography is "lewd" within the meaning of the statute. The court stated:

> "The meaning of the term 'lewd exhibition' is a question of statutory construction[,]

15

which this court reviews *de novo*. [Citation.] Parenthetically, we agree with the dissent that, when reviewing the sufficiency of the evidence in a criminal case, the proper standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] Here, however, we are interpreting the meaning of the statutory term 'lewd exhibition.' [Citation.] We must review the photographs themselves and determine whether those photographs are lewd under the child pornography statute. We are not faced with reviewing the sufficiency of the evidence. Therefore, the *de novo* standard of review is the correct standard of review for this appeal." *Lamborn*, 185 Ill. 2d at 590, 708 N.E.2d at 353-54.

The *Sven* court explained the reasoning behind the application of a *de novo* standard of review in child pornography cases as follows:

"Given that the analysis focuses on the content of the images, *de novo* review makes sense. Quite simply, the trial court is in no better position to judge the content of a photographic image than we are where the image is available to us. Indeed, the principle that we conduct *de novo* review where facts are undisputed and only questions of law remain is a common one." *Sven*, 365 Ill. App. 3d at 231, 848 N.E.2d at 233.

It is clear from the foregoing that the primary reason Illinois courts have applied a *de novo* standard of review in child pornography cases is that those reviewing courts were examining a visual depiction rather than determining the sufficiency of the evidence. Our analysis is necessarily different in this case than it is in cases where the reviewing court has the photographs themselves to review. In a case such as this, where we are reviewing the trial court's findings based upon testimonial descriptions of those photographs, we believe

16

that the standard of review should be the same as in any case in which the sufficiency of the evidence is challenged. We therefore find that the proper standard of review in this case is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

## C. *Sufficiency of the Evidence*

We must now consider whether the evidence presented was sufficient to prove the defendant guilty beyond a reasonable doubt of child pornography. We first note that A.B. described four photographs that she found on the computer in connection with the September 28, 2001, incident. Although the trial court specifically referred to only one of the photographs in announcing the guilty verdict, no determination was made that the other three did not violate the statute. Consequently, the defendant's child pornography conviction can be sustained based upon any one or more of these photographs.

The first photograph was described as a full frontal view of D.J., who was completely nude, standing in the bathroom, and attempting to cover herself, but whose vaginal area was fully exposed. The second photograph was similar to the first but taken of the back of D.J., who was completely nude, looking over her shoulder at the camera, with her buttocks fully exposed. D.J. described the circumstances under which these first two photographs were taken to both A.B. and the investigating officer, who testified to D.J.'s statements. In addition, A.B. viewed these two photographs on the computer and described the visual depictions to the court. Finally, the investigating officer testified that the defendant admitted taking these two photographs. Thus, it is undisputed that the defendant took these two photographs. The only issue is whether the testimonial description of the photographs is sufficient to meet the statutory definition beyond a reasonable doubt.

Our first task is to decide whether the evidence is sufficient to sustain the defendant's conviction on count I based on either of these two photographs that the defendant admitted

17

taking on September 28, 2001. Our resolution of this issue turns on whether the photographs, as described in the evidence, are " 'lewd' for purposes of the Illinois child pornography statute." *Lamborn*, 185 Ill. 2d at 586, 708 N.E.2d at 352; 720 ILCS 5/11-20.1 (West Supp. 2001). Determining whether the photographs are "lewd" as defined by the statute requires us to apply the six factors outlined in *Lamborn*, 185 Ill. 2d at 592, 708 N.E.2d at 354.

First, was the focal point of the visual depiction on D.J.'s genitals, pubic area, buttocks, or breasts? Based on A.B.'s description of these two photographs, they do not seem to include that focus. A.B. described photographs one and two as full views of D.J. standing naked in the bathroom. In photograph one, D.J. was facing the camera, and her vaginal area was plainly visible even though she was trying to cover herself. In photograph two, D.J. was facing away from the camera but looking back over her shoulder, and her buttocks were plainly visible. There is no indication that the focal point of either of these two photographs was D.J.'s vaginal area or buttocks.

Second, was the setting of the visual depiction sexually suggestive? The setting as described by A.B., the master bathroom, is not, by itself, sexually suggestive. There is nothing about a bathroom in general that suggests sexual activity. Accordingly, we do not find that this criterion applies.

Third, was D.J. depicted in an unnatural pose, or in inappropriate attire, considering her age? Standing up, looking forward into the camera (photograph one) and looking back at the camera (photograph two) are not unnatural poses. Of course, D.J. was naked, which is unusual for a 10-year-old girl. However, the element of nudity is not a part of this criterion. The court in *Villard* articulated how nakedness applies to this criterion:

"Whether nakedness itself is 'inappropriate' is probably best answered not in the abstract, but with reference to the other factors present in a specific case. For example, a photograph of a naked girl might not be lascivious (depending on the

18

balance of the [other] factors), but a photograph of a girl in a highly sexual pose dressed in hose, garters, and a bra could certainly be found to be lascivious." *Villard*, 885 F.2d at 124.

Accordingly, we do not find that criterion number three applies.

Fourth, was D.J. partially clothed or nude? D.J. was nude, which satisfies this criterion.

Fifth, did the visual depictions suggest sexual coyness or a willingness to engage in sexual activity? When considering this criterion, there should be evidence, whether "by gesture, facial expression, or pose, that the subject of the photograph displayed a willingness to engage in sexual activity." *Villard*, 885 F.2d at 124. Because we find nothing in A.B.'s descriptions of the photographs to fulfill this criterion, it does not apply.

Sixth, are the visual depictions intended or designed to elicit a sexual response in the viewer? This criterion is more difficult to apply than the others. In *Sven*, the court concluded that "the proper inquiry focuses upon whether the image invites the viewer to perceive the image from some sexualized or deviant point of view." *Sven*, 365 Ill. App. 3d at 238, 848 N.E.2d at 239. " '[L]asciviousness is not a characteristic of the child photographed *but of the exhibition which the photographer sets up* for an audience that consists of himself or likeminded pedophiles.' " (Emphasis added in *Sven*.) *Sven*, 365 Ill. App. 3d at 238-39, 848 N.E.2d at 239 (quoting *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987)). A.B. did not testify that the photographs portrayed D.J. in a "pose, posture[,] or setting" (720 ILCS 5/11-20.1(a)(1)(vii) (West Supp. 2001)) which would suggest sexual activity. Thus, when we consider the images A.B. described and whether they invite the viewer to perceive them from some sexualized or deviant point of view, we find that photographs one and two do not fit within this criterion.

In summary, we have determined that only factor four, that the child depicted was

19

nude, applies to these two photographs. The trial court did not specifically find the photographs of D.J. standing facing and looking back at the camera (numbers one and two) to constitute child pornography, and neither do we. Photographs one and two are simply nude photographs. Mere nudity does not qualify as child pornography. *Lamborn*, 185 Ill. 2d at 594, 708 N.E.2d at 355. As described in the testimony, these photographs are similar to the photograph in *Lewis*, where the court determined that a photograph of a nude child simply standing in a bedroom was "an example of 'nudity without lewdness' and thus [did] not constitute child pornography." *Lewis*, 305 Ill. App. 3d at 678, 712 N.E.2d at 410.

We next consider whether the defendant's child pornography conviction can be upheld based upon photographs three and four, the alleged cropped and enlarged photographs of D.J.'s vaginal area and buttocks. It is evident from the trial judge's statements that the focus of the guilty verdict on count I was A.B.'s description of the purported cropped and enlarged photo of D.J.'s vaginal area. No other witness offered testimony regarding these two photographs. A.B.'s entire testimony regarding those photographs is as follows:

"Q. And you indicated that in addition to those two full photos that [*sic*] there were two other photos that seemed to be[–]could you explain to the Court?

A. Well, there was where he had cut the section of her vaginal area out and made its own picture.

THE COURT: So, from the photo[–]there was a full frontal photo[–]he had cut a section out of that that encompassed the vaginal area?

A. Right.

Q. What had he done with that?

A. Blew it up and made it its own picture.

Q. And in that photo were you able to see more clearly her vaginal area?

A. Yes.

20

Q.  And, again, the genitalia and pubic hair, if there would have been any, things of that nature?

A.  Yes.

Q.  Her hands did not cover?

A.  No.

* * *

Q. *** You talked about four photos and we described the first two, one being a full frontal, the second being a full rear view, then the ones you described that were blown up of the vaginal area.  In that second one, the third photo, the blown[-]up vaginal area, what happened to be the main focus?  Was there a central focus in that photo?

A.  It's [*sic*] was all of the vaginal area.

Q.  Okay.  And what was the fourth photo?  What did it depict or what did you see in it?

A.  It was done the same way, but of the buttocks.

Q.  Just blown up, simply a picture of the buttocks?

A.  Yes.

Q.  No other part of her body or other parts of the rear?

A.  No.

Q.  And what would be the central focus of that photo?

A.  Her buttocks."

Even before we consider whether the third and fourth photographs A.B. described are "lewd" within the meaning of the statute, it is evident that the above testimony presents serious evidentiary problems.  First, the defendant is charged in count I with child pornography in that he "photographed" D.J.  The State is obligated to prove him guilty of that

21

charge and not some uncharged violation of the same statute. "[A] defendant may not be convicted of an offense he has not been charged with committing." *People v. Kolton*, 219 Ill. 2d 353, 359, 848 N.E.2d 950, 954 (2006). There is no testimony that the defendant took close-up photographs of D.J.'s vaginal area or buttocks on September 28, 2001. A.B.'s only testimony about the third and fourth photographs is her conclusion that they were versions of the first and second photographs that had been modified on the defendant's computer. The statute provides for various ways in which a person might commit child pornography, including filming, videotaping, photographing, or depicting by computer. 720 ILCS 5/11-20.1(a)(1) (West Supp. 2001). Possession of child pornography is also a separate offense. 720 ILCS 5/11-20.1(a)(6) (West Supp. 2001). However, the defendant was not charged with depicting D.J. by computer or with possession of child pornography. Although there might be other charges that could have been brought against the defendant based upon his reprehensible conduct, our task is to determine the sufficiency of the evidence on the offense charged.

Second, there is no foundation or corroboration in the evidence to support A.B.'s conclusion that the purported cropped and enlarged photographs were taken or modified by the defendant or that they even depicted D.J. The defendant never admitted creating the images. No testimony was offered that A.B. had any training or experience in determining whether a particular photograph has been used to create another photograph. No testimony was offered regarding how A.B. concluded that it was the defendant, to the exclusion of all others, who created these images. Further, no testimony was offered to explain how A.B. determined that the photos of the "vaginal area" and "buttocks" were, in fact, images of D.J., or of any other child. *Cf. People v. Hebel*, 174 Ill. App. 3d 1, 13, 527 N.E.2d 1367, 1374-75 (1988) (the victim's father and stepmother identified the child in photographs of the child's vagina and buttocks, by reference to moles, freckles, or brown spots on the child's right

22

buttock and right thigh).

Third, A.B.'s testimony about these photographs lacks sufficient detail to determine exactly what body parts were portrayed. A.B. testified that the photographs only showed D.J.'s "vaginal area" and "buttocks." We are unable to determine from this description whether the photographs included all of D.J.'s torso or a much smaller area. The fact finder is left to speculate upon what the photographs actually portrayed.

Finally, we cannot ignore the fact that the only witness who described these photographs is D.J.'s mother–the defendant's ex-wife–who admitted that she had deleted the photographs from the computer. A.B.'s antagonism toward the defendant is evident from the record.

All of the above concerns demonstrate the difficulties encountered in attempting to prove a defendant guilty of child pornography without the actual visual depiction available as evidence. These considerations lend credence to the court's concern in *Villard* that when the testimonial evidence on a child pornography charge "lack[s] sufficient detail in many important respects, [there is] the distinct possibility that the [trier of fact] may [make] a finding of lasciviousness based on conjecture or imagination rather than fact." *Villard*, 885 F.2d at 126. Accordingly, for reasons independent of the content of the photographs, and considering the evidence in the light most favorable to the State, we find that there is not sufficient evidence to convict the defendant of child pornography as charged in count I based upon the third and fourth photographs described by A.B.

In considering the alleged content of these two photographs, we note that the trial court essentially found that any photograph that portrays only the vaginal area of a child is "lewd" within the meaning of the statute. While the invitation to sustain this finding is tempting, we cannot interpret the statute in this way. The statute prohibits depictions of a "lewd exhibition" of a child's unclothed genitals. Therefore, a distinction must be made

23

under the statute between "a depiction of a child's genitals" and "a lewd depiction of a child's genitals." Criminal statutes must be interpreted so that they clearly separate criminal conduct from noncriminal conduct.

Viewing the scant evidence offered in the light most favorable to the State, we conclude that photographs three and four are cropped and enlarged portions of photographs one and two that portray some portion of D.J.'s vaginal area and buttocks. We have already determined that photographs one and two are not "lewd" within the meaning of the statute. No evidence was offered that would justify a different finding with regard to photographs three and four. We are unable to determine whether a different result would be warranted if the actual photographs were available. We can base our decision only upon the evidence offered and the peculiar facts of this case.

Accordingly, based upon the charge as it is written and the State's arguments, and considering the evidence in the light most favorable to the State, we cannot find that the State proved the defendant guilty beyond a reasonable doubt of knowingly photographing D.J. while she was "depicted or portrayed in a pose or setting involving a lewd exhibition of her unclothed genitals, pubic area[,] and buttocks." We must therefore reverse the defendant's child pornography conviction.

## II. Aggravated Assault Conviction

The defendant also argues that he was not proved guilty beyond a reasonable doubt of aggravated assault because the State did not show that he had the specific intent to place A.B. in fear of receiving a battery. In count III, the State charged the defendant with aggravated assault, a violation of section 12-2(a)(13) of the Criminal Code of 1961 (720 ILCS 5/12-2(a)(13) (West 2000)), in that he knowingly discharged a firearm while engaged in a verbal altercation with A.B., placing her in reasonable apprehension of receiving a battery.

24

The evidence supporting the State's charge was relatively simple. When A.B. confronted the defendant about the second set of photographs and told him she was leaving, a "heated argument" ensued, and he told her that he would not let her leave. During this argument, the defendant got his handgun, sat on the bed, pointed the gun at himself, and threatened to kill himself. As A.B. was leaving with their son, M.W., she heard gunshots coming from the bedroom, and she understandably became frightened for her safety and the safety of her children. It is reasonable to infer from the defendant's conduct that his specific intent was to place A.B. in fear of receiving a battery. Why else would he tell her he would not let her leave and produce a gun for her to see?

The defendant argues that there is no evidence to show that A.B. was ever in fear of receiving a battery. He contends that he never threatened her with the gun, that he only pointed it at himself, and that she returned to the marital residence and slept in the same bedroom with him later that night. Whether the totality of the defendant's actions was sufficient to place A.B. in reasonable apprehension of receiving a battery was a question for the trier of fact, in this case the judge. See *People v. Ivy*, 133 Ill. App. 3d 647, 655, 479 N.E.2d 399, 404 (1985).

Under the circumstances, the defendant's arguments are without merit. First, the defendant did not have to threaten A.B. with the gun; his use of a handgun during a heated argument was sufficient to place her in reasonable fear of receiving a battery. Second, that the defendant pointed the gun at himself rather than at A.B. does not preclude a finding of reasonable apprehension, because he told her he was not going to let her leave. It was reasonable under those circumstances for A.B. to conclude that if the defendant was sufficiently distraught to tell her she was not going to leave and to point a handgun at himself, he might also be sufficiently distraught to turn the gun on her or M.W. Finally, whatever A.B. did *after* the incident with the gun is of no consequence to the moments in

25

which she was confronted with a handgun-wielding husband in the midst of a heated argument. Certainly, it was within the province of the court, as the trier of fact, to conclude that, during the incident with the gun, A.B. was placed in reasonable apprehension of receiving a battery, regardless of her subsequent conduct. Considering the evidence in the light most favorable to the State, we find that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of aggravated assault. Accordingly, we affirm the defendant's aggravated assault conviction.

## III. Severance of Unrelated Charges

The defendant also argues that his attorney provided ineffective assistance by failing to move to sever the aggravated assault charge from the child pornography charges. In order to prevail on this claim, the defendant must show that his attorney's performance was objectively deficient and that he was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). To establish prejudice, the defendant must show that there is a reasonable probability that, but for his attorney's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

"Two or more offenses may be charged in the same *** information *** in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are based on the same act or on 2 or more acts which are part of the same comprehensive transaction." 725 ILCS 5/111-4(a) (West 2000). "A defendant is not prejudiced by the improper joinder of charges if, had separate trials been given, [the] defendant still would have been convicted." *People v. Gonzalez*, 339 Ill. App. 3d 914, 922, 791 N.E.2d 578, 584 (2003).

Thus, in the present case, the issue is, If the defendant's attorney had requested a separate trial on the aggravated assault charge and if that request had been granted, is it likely

that he would have been acquitted of aggravated assault? We find that there is no reasonable probability that the outcome would have been different in a separate trial of the aggravated assault charge. The evidence against the defendant upon the aggravated assault count was overwhelming. Had the aggravated assault charge been tried separately, the State would have been allowed to submit evidence that A.B. told the defendant she was leaving; that the defendant told her he would not let her leave; that he got a gun; and that, as she and M.W. were leaving, he fired the gun three times. A.B. would have testified that she had feared for her safety and that of her children. There is no reasonable likelihood that the defendant would have been acquitted of aggravated assault based upon that evidence. Hence, the defendant was not prejudiced by his attorney's alleged error, and he is not entitled to a new trial on that basis.

## CONCLUSION

For all of the reasons stated, we affirm the defendant's aggravated assault conviction, reverse his child pornography conviction, and remand for a new sentencing hearing. At the sentencing hearing, the trial court is ordered to credit the defendant $5 per day for the 47 days he spent in custody against any fine imposed.


Affirmed in part and reversed in part; cause remanded.


WELCH and WEXSTTEN, JJ., concur.

27

NO. 5-05-0559

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Montgomery County. |
| | ) | |
| v. | ) | No. 02-CF-234 |
| | ) | |
| JEFFREY R. WAYMAN, | ) | Honorable |
| | ) | John P. Coady, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

**Opinion Filed**:      March 10, 2008

---

**Justices**:      Honorable Bruce D. Stewart, P.J.

Honorable Thomas M. Welch, J., and
Honorable James M. Wexstten, J.,
Concur

---

**Attorneys**      Daniel M. Kirwan, Deputy Defender, Rita K. Peterson, Assistant Defender, Office
**for**      of the State Appellate Defender, Fifth Judicial District, 117 North Tenth Street, Suite
**Appellant**      #300, Mt. Vernon, IL 62864

---

**Attorneys**      Hon. Christopher Matoush, State's Attorney, Montgomery County Complex Building,
**for**      120 North Main Street, Hillsboro, IL 62049; Norbert J. Goetten, Director, Stephen
**Appellee**      E. Norris, Deputy Director, Office of the State's Attorneys Appellate Prosecutor,
      730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864

---

.