2021 IL App (2d) 190029-U
No. 2-19-0029
Order filed March 9, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 16-CF-1563 |
| | ) | |
| ADAN RODRIGUEZ-OCAMPO, | ) | Honorable |
| | ) | Robert A. Miller, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Bridges and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1     *Held*: Images forming the basis for defendant's convictions of soliciting child pornography were lewd; trial court did not commit plain error in failing to *sua sponte* instruct jury regarding the legal definition of "lewd"; and defendant's sentence was not excessive.

¶ 2     A jury found the defendant, Adan Rodriguez-Ocampo, guilty of three counts of soliciting child pornography (720 ILCS 5/11-20.1(a)(4) (West 2014)). He appeals, arguing that (1) two of his convictions must be reversed because the pictures that formed the basis for them were not lewd, (2) he is entitled to a new trial of any remaining counts because the trial court did not instruct the

jury on the legal definition of the term "lewd," and (3) his sentence of 29 years is excessive and should be reduced.

¶ 3                                 I. BACKGROUND

¶ 4     The victim, Y.R., has spina bifida and wears plastic leg braces on her lower legs. The defendant is her uncle. When Y.R. was seven or eight years old, the defendant began living in her family's home. He lived there for a few years before moving into his own apartment across the street.

¶ 5     When Y.R. was 15 years old, her mother found pictures of Y.R.'s breasts and genitals on Y.R.'s phone. The pictures were part of a Facebook message exchange between Y.R. and the defendant, in which the defendant asked Y.R. to send him pictures and Y.R. complied by sending him three pictures. The first picture (which formed the basis for count I) showed Y.R. taking a picture of herself in a bathroom mirror with her breasts exposed. In the picture, both of her hands were holding her phone, which covered much of her face. The second picture (count II) was an extreme close-up of a pubic area and vaginal opening. The third (count III) was another extreme close-up of a pubic area and vaginal opening, with fingers holding the labia open to display the vaginal opening. Y.R.'s mother recognized the ring on one of the fingers in this picture as a ring that she had given Y.R. a few months earlier. Y.R.'s mother also recognized the pubic area in the second and third pictures as her daughter's, because she assisted Y.R. with her catheter on a daily basis and was familiar with her daughter's body. The police were called and the defendant was eventually charged with three counts of soliciting child pornography.[1]

_____

[1] Based on statements Y.R. made to investigators, the defendant was also charged with sexually abusing Y.R. when she was younger. He was tried and sentenced separately on those

¶ 6      The testimony at trial focused on the course of the investigation and the statements given by the defendant and Y.R. during the investigation.  During closing arguments, the State asserted that the pictures were "obviously" lewd and that the jury could "make that determination."  The defense did not make any argument that the pictures were not lewd.  Rather, the defense argued that the State had failed to prove that the defendant asked Y.R. to send him lewd pictures.  The jury convicted the defendant on all three counts.

¶ 7      After a sentencing hearing at which the defendant asked to be sentenced to time served (838 days) and conditional discharge, and the State asked for the maximum sentence of 45 years, the trial court sentenced the defendant to a total of 29 years in prison (4 years on count I, 10 years on count II, and 15 years on count III, to run consecutively).  The defendant's motion to reconsider the sentence was denied.  This appeal followed.

¶ 8                                        II. ANALYSIS

¶ 9                     A. Sufficiency of the Evidence on Counts I and II:  Lewdness

¶ 10      The defendant's first argument on appeal is that his convictions on counts I and II must be reversed outright because the pictures on which those convictions were based were not child pornography, as they were not "lewd depictions" of Y.R.'s unclothed genitals and breasts.  See 720 ILCS 5/11-20.1(a)(1)(vii) (West 2014).  The defendant does not raise any argument regarding count III, which was based on the picture of Y.R.'s vaginal opening with her fingers shown.

¶ 11      This is technically an argument about the sufficiency of the evidence of an essential element of the offense, the type of issue that is usually reviewed under a deferential standard.  However, our supreme court has instructed that, where the reviewing court is able to view the

_____

charges.  Those convictions are not before us.

depiction for itself, the question of whether the depiction of a child is lewd is reviewed under the nondeferential *de novo* standard. *People v. Lamborn*, 185 Ill. 2d 585, 590 (1999). Accordingly, we start from scratch in assessing whether the pictures at issue qualify as lewd under the legal definition of that term.

¶ 12    Historically, courts grappling with this issue applied a dictionary definition of "lewd," that is, "[o]bscene, lustful, indecent, lascivious, lecherous." See *People v. Walcher*, 162 Ill. App. 3d 455, 460 (1987) (quoting Black's Law Dictionary 817 (5th ed. 1981)). However, "[t]hose terms, while synonymous, provide little concrete guidance. Relying on definitions like these would leave courts with an I-know-it-when-I-see-it approach, reminiscent of the United States Supreme Court's attempts to define obscenity. [Citation.] Such an approach is constitutionally infirm." *People v. Sven*, 365 Ill. App. 3d 226, 229 (2006). Accordingly, in *Lamborn* the court adopted a six-factor test for determining whether an image was lewd:

"(1) whether the focal point of the visual depiction is on the child's genitals [or breasts, if the child is female]; (2) whether the setting of the visual depiction is sexually suggestive, *i.e.*, in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Lamborn*, 185 Ill. 2d at 592.

Not all of these factors must be present for an image to be deemed lewd. *Id.* The image must be judged on its overall content, taking into account the age of the child portrayed. *Id.* at 592-93. Crucially, the evaluation must be based on the image itself, not the circumstances under which the

image was obtained, the defendant's purpose in creating or possessing the image, or whether the defendant was likely aroused by the image. *Id.* at 594-95. "A determination that a photograph constitutes child pornography focuses on the photograph itself, not on the effect that the photograph has on an individual viewer." *Id.* at 594.

¶ 13    Here, in applying the six-factor *Lamborn* test, the defendant concedes that the first and fourth factors are present. The focal point of the picture of Y.R.'s vaginal area is of her genitals, and the focal point of the picture of Y.R. in the bathroom is her breasts (first factor). Moreover, Y.R.'s genitals and breasts are completely unclothed (fourth factor). The defendant notes that "[n]udity without lewdness is not child pornography," however (*id.*), and argues that the remaining factors are not present, requiring a determination that the two pictures are not lewd. We agree that, in this case, the presence of the first and fourth factors alone would not be sufficient to find these pictures to be "lewd" under the statute. We therefore consider the remaining four factors for ourselves.

¶ 14    The second factor is whether the setting of the image is sexually suggestive, "*i.e.,* in a place or pose generally associated with sexual activity." *Id.* at 592. The State argues that the picture taken in the bathroom satisfies this factor, because the bathroom is a room associated with intimate and private activity. However, the fact that a picture was taken in a bathroom, without more, is not sexually suggestive. See *People v. Wayman*, 379 Ill. App. 3d 1043, 1057 (2008) ("There is nothing about a bathroom in general that suggests sexual activity."). In contrast, the close-up of Y.R.'s vaginal opening involves a pose associated with sexual activity—the placement of an object immediately outside of the vaginal opening. Y.R.'s pubic area is shown in extreme close-up, and the picture appears to have been taken by placing the camera directly below Y.R.'s crotch. Where

the perspective of an image places the viewer in a particular vantage point, that vantage point can be considered in determining whether the image is lewd. *Sven*, 365 Ill. App. 3d at 236.

¶ 15    Because the pose in which the picture was taken is not associated with any ordinary non-sexual activity, the picture of Y.R.'s vaginal opening also satisfies the third factor (that is, whether the child is depicted in an unnatural pose).   Y.R. is not shown playing in the sprinkler, bathing, or engaged in any other common childhood activity; rather, the viewpoint suggests that Y.R. posed for the camera by placing it between her legs directly below her crotch.  As for the bathroom picture, it depicts Y.R. taking a picture of her own naked breasts.  This, again, is an artificial sexual display unassociated with any usual activity for a child.  Compare *id.* at 594 (photographs of girls with exposed breasts were not lewd where they depicted "the incidental nudity of two teenage girls *** swimming together in a river"); *Wayman*, 379 Ill. App. 3d at 1057 (nude child standing facing the camera or facing away while looking back over her shoulder was not in an "unnatural pose").

¶ 16    The fifth factor is whether the depiction suggests an invitation or willingness to engage in sexual activity.  Because the bathroom picture does not simply capture Y.R. naked in a bathroom, but rather photographing her own naked body with a cellphone, the picture suggests a willingness to, at a minimum, share pictures of her naked breasts.  That is not necessarily the same as a willingness to engage in sexual activity, but it does show a deliberate sexual display.  The same is true of the extreme close-up of Y.R.'s vaginal opening, which suggests an implicit invitation to sexual activity, given that the activities associated with that opening are almost wholly sexual.

¶ 17    The final factor is "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Lamborn*, 185 Ill. 2d at 592.  Courts have struggled to apply this factor.  In *Sven*, this court held that "the question is whether the characteristics of the image invite the viewer to see the image from a particular perspective" or point of view.  Further, " 'point of view'

refers to both the physical-spatial orientation of the view toward" the child and the mental lens through which the viewer sees the child. *Sven*, 365 Ill. App. 3d at 236. The bathroom picture, which shows Y.R. creating a picture of her own naked breasts, places the viewer in a voyeuristic role, an implicitly sexual role. *Id.* at 239 ("[v]oyeurism is sexually motivated conduct"). In contrast, the close-up of Y.R.'s vaginal opening does not thrust the viewer into a voyeuristic role.

¶ 18    In sum, we find that the first, third, fourth, sixth, and possibly fifth factors are present with respect to the bathroom picture, and the first through fifth factors are present with respect to the close-up of Y.R.'s vaginal opening. We therefore reject the defendant's argument that these pictures are not lewd.

¶ 19                    B. Jury Instruction Defining "Lewd"

¶ 20    We next address the defendant's argument that the trial court should have instructed the jury on the legal definition of "lewd." It is undisputed that the jury was instructed in accordance with the Illinois Pattern Jury Instructions – Criminal (IPI), that the defendant did not object to the jury instructions given, and that the defendant did not tender any proposed jury instruction defining "lewd." Thus, this argument is forfeited unless the trial court's conduct amounted to plain error. See Ill. S. Ct. R. 366(b)(2)(i) (eff. Feb. 1, 1994) ("No party may raise on appeal the failure to give an instruction unless the party shall have tendered it"); but see Ill. S. Ct. R. 451(c) (eff. July 1, 2007) ("substantial defects" relating to jury instructions "are not waived by failure to make timely objections thereto if the interests of justice require"); Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.").

¶ 21    Plain-error review permits us to consider a forfeited claim of clear error where the evidence is so closely balanced that the error alone might have resulted in the defendant's conviction, or

where, regardless of the closeness of the evidence, the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). For plain error to exist, however, we must first decide that an error actually occurred. *People v. Naylor,* 229 Ill. 2d 584, 593 (2008). Thus, we consider that issue.

¶ 22    "Whether the trial court failed to properly instruct the jury is a question of law subject to *de novo* review." *People v. Delgado*, 376 Ill. App. 3d 307, 312 (2007).

> "In Illinois, the burden of preparing jury instructions is primarily on the parties [citation], and the failure to offer an instruction or an objection to an instruction at trial will usually waive the issue on review [citation]. However, in a criminal case the trial court is responsible for fully instructing the jury on the elements of the offense, the burden of proof[,] and the presumption of innocence. [Citation.] Where the instruction error was in a definition essential to the jury's assessment of the defendant's guilt or innocence, *** it is reversible error, and the defendant is entitled to a new trial." *Id.* at 314.

¶ 23    The defendant argues that "lewd" was a term essential to the jury's assessment of his guilt or innocence because the jury had to determine whether he solicited "lewd depictions" of Y.R.'s unclothed genitals or breasts, and the common understanding of "lewd" is not necessarily the same as the legal definition under the *Lamborn* six-factor test. Thus, he argues, the trial court had an obligation to give an instruction providing the legal definition of "lewd" so as to ensure that the jury properly applied the law. This argument might potentially prove persuasive in some other case. Under the circumstances present here, however, we find no error in the trial court's failure to give such a definition.

¶ 24    The defendant complains that the State provided jurors with a legally incorrect, subjective approach to lewdness by arguing that the pictures were "obviously lewd" and that the jurors could

"make that determination." Not only did the defendant fail to object to this argument, however, he implicitly conceded the issue, failing to offer any argument whatsoever that the pictures were *not* lewd. This concession of the issue meant that the legal definition of "lewd" was not essential to the jury's determination of the defendant's guilt or innocence under the statute. Because there was no argument that the pictures were *not* "lewd depictions" as required by the statute, the trial court did not err in not *sua sponte* instructing the jury on the legal definition of "lewd." See *People v. Alexander*, 408 Ill. App. 3d 994, 1002-03 (2011) (no error where the trial court's failure to *sua sponte* give an instruction did not "direct the jury's finding as to an essential element" that was actually at issue in the case); see also *People v. Dow*, 2017 IL App (1st) 141777-U, ¶ 32 (where defendant raised a different theory of defense on appeal than was raised below, trial court did not err in not *sua sponte* instructing the jury on the theory that was raised for the first time on appeal).

¶ 25    The cases cited by the defendant involve different circumstances and therefore are inapposite. Unlike *People v. Stromblad*, 74 Ill. 2d 35 (1978), in which the trial court gave an erroneous definition of obscenity, the trial court here did not misstate the law of child pornography. In *People v. McSwain*, 2012 IL App (4th) 100619, the trial court did provide a definition of "lewd" that used the *Lamborn* factors, but only after the jury specifically asked for a definition. Here, of course, the jury did not make such a request. *McSwain* does not stand for the proposition that a trial court must *sua sponte* give such a definition. In *Delgado*, 376 Ill. App. 3d at 316, the trial court failed to give an IPI instruction defining the term "sexual conduct." This was error, as trial courts must give any IPI instruction that is applicable under the facts of the case and the governing law. Ill. S. Ct. R. 451(a) (eff. July 1, 2007). Here, by contrast, there is no IPI instruction defining the term "lewd." The trial court thus would not only have had to anticipate (without any request from the parties or the jury) that the jury should be instructed on the meaning of "lewd," it would

have had to oversee the drafting of an accurate non-IPI instruction. Its failure to do so, when the defendant himself did not raise any argument about the lewdness of the pictures, was not error at all, let alone plain error.

¶ 26                                    C. Sentence

¶ 27    The defendant's final contention is that his sentence was excessive. We reject this contention. In doing so, we take note of facts relevant to the sentence that were established at trial, through the presentence investigation (PSI) report, and at the sentencing hearing.

¶ 28    The sentencing range on each count of conviction was 4 to 15 years' imprisonment, and the sentences were required to run consecutively. 730 ILCS 5/5-4.5-30(a), 5-8-4(d)(2.5) (West 2014). At the close of the sentencing hearing, where defense counsel drew attention to the defendant's good behavior and financial support of his family during his pretrial detention, the trial court recited in great detail the mitigating and aggravating factors that it had considered. It noted that it would consider the harm done separately for each count, and if particular aggravating factors applied, it would apply those factors to only one count. The court then imposed the minimum sentence, four years, on count I. It imposed an intermediate sentence of ten years on count II, finding that it was appropriate to consider the fact that the defendant repeatedly asked Y.R. to send him lewd pictures and attempted to hide his actions by asking Y.R. to delete them from her phone. Finally, the court imposed the maximum sentence, 15 years, on count III, finding that the defendant had caused Y.R. significant harm through his physical contact with Y.R. over a period of years. The total sentence imposed was thus 29 years. The defendant filed a motion to reconsider the sentence but the trial court declined to do so.

¶ 29    On appeal, the defendant argues that, although the trial court stated that it had considered the mitigating factors before imposing sentence, the court did not explicitly go through those

factors, indicating that it failed to give those factors sufficient weight. In particular, he points to his good conduct and financial support of his family during pretrial detention, his lack of any prior criminal history, and the fact that he did not threaten Y.R. or physically harm her.

¶ 30 "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). "[T]he trial court is in the best position to fashion a sentence that strikes an appropriate balance between the goals of protecting society and rehabilitating the defendant." *People v. Risley*, 359 Ill. App. 3d 918, 920 (2005). Although Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) grants a reviewing court the power to reduce a sentence, that power should be exercised " 'cautiously and sparingly.' " *Id.* (quoting *People v. O'Neal*, 125 Ill. 2d 291, 300 (1988)). Thus, we may not disturb a sentence within the applicable sentencing range unless the trial court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). A sentence is an abuse of discretion only if it is at great variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Id.* at 210. We may not substitute our judgment for that of the trial court merely because we might weigh the pertinent factors differently. *Id.* at 209.

¶ 31 In determining an appropriate sentence, relevant considerations include the nature of the crime, the protection of the public, deterrence, and punishment, as well as the defendant's rehabilitative prospects. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The weight to be attributed to each factor in aggravation and mitigation depends upon the particular circumstances of the case. *Id.* There is a presumption that the trial court considered all relevant factors in determining a sentence, and that presumption will not be overcome without explicit evidence from the record that the trial court did not consider mitigating factors or relied on improper aggravating factors. *People v. Payne*, 294 Ill. App. 3d 254, 260 (1998).

¶ 32    Here, the trial court explicitly stated that it considered the mitigating factors presented by the defendant, and nothing in the record suggests otherwise.  A trial court need not expressly state that it has considered each of the mitigating factors.  *People v. Ayala*, 386 Ill. App. 3d 912, 920 (2008).

¶ 33    As for the defendant's bare-bones argument that the trial court failed to appropriately address the defendant's potential for rehabilitation, the defendant has failed to identify any way in which that potential was discounted by the trial court.  Although the sentence imposed was lengthy, the defendant has not shown that it was an abuse of discretion.  In light of the severity of the crimes charged and the factors in aggravation and mitigation, we cannot say that the defendant's overall sentence was manifestly disproportionate to the nature of the offenses, or that the trial court abused its discretion in imposing such a sentence.

¶ 34                                  III. CONCLUSION

¶ 35    For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

¶ 36    Affirmed.